UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WESTERN BOXED MEATS
DISTRIBUTORS, INC. and SAND
DOLLAR HOLDINGS, INC.,

                          Plaintiffs,

     v.

WILLIAM L. PARKER, et al.,

                          Defendants.

CASE NO. C17-5156 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS

This matter comes before the Court on the motion to dismiss of Defendants William Parker, Brian Parker, Double B Food Distributors, Caytie Zielinski, Bernice Cazares, Christopher Murphy, Christi Sanchez, and Morgan Torres (collectively "Defendants"). Dkt. 15. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows:

## I.   PROCEDURAL HISTORY

On March 2, 2017, Plaintiffs Western Boxed Meats Distributers, Inc. ("WBX") and Sand Dollar Holdings, Inc. filed a complaint against William Parker and Brian Parker ("Parkers") and Double B Food Distributors ("Double B"). Dkt. 1. On March 16, 2017, WBX filed a first amended complaint to include Caytie Zielinski, Bernice Cazares, Christopher Murphy, Christi Sanchez, and Morgan Torres (collectively "Non-Parker

1  Defendants") and four unnamed individuals as defendants.  Dkt. 8 ("Compl.").  Plaintiffs

2  assert claims for declaratory judgment, breach of contract, breach of covenant of good

3  faith and fair dealing, breach of fiduciary duty, tortious interference with economic

4  relations, conversion, promissory estoppel, unjust enrichment, accounting, trade secret

5  misappropriation, violations of the Defense of Trade Secrets Act ("DTSA"), and

6  violations of the Computer Fraud and Abuse Act ("CFAA").

7        On May 4, 2017, Defendants filed a motion to dismiss.  Dkt. 15.  On May 22,

8  2017, WBX responded.  Dkt. 17.  On May 26, 2017, Defendants replied.  Dkt. 18.

## II.    FACTUAL BACKGROUND

10        This case concerns an alleged scheme by the individual defendants, all former

11  employees of WBX, to form and operate their own company, Double B, to compete with

12  WBX.  WBX alleges that Defendants are competing with WBX for their own benefit

13  using WBX's confidential, proprietary, and trade secret information (collectively

14  "Confidential Information"), and that doing so violates the individual defendants'

15  contractual and employment obligations to WBX.  WBX seeks to enforce those

16  obligations and to mitigate harm to its business.  While the facts of this case are disputed

17  by the parties, the Court accepts as true the allegations in the complaint for purposes of

18  this motion.

19        WBX is "a distributor of meat, seafood, and dairy products to retailers and other

20  distributors."  Compl. ¶ 15.  WBX is an Oregon corporation with its principal place of

21  business in Portland, Oregon, and a sales office in Puyallup, Washington ("Puyallup

22  Sales Office").  Compl. ¶¶ 3, 16.  Sand Dollar Holdings is a Delaware corporation with

1  its principal place of business in National City, California.  *Id.* ¶ 4.  All individual

2  defendants are Washington residents, and former Washington employees of the Puyallup

3  Sales Office.  *Id.* ¶¶ 5, 6, 8–12.

4       The Parkers were hired as co-managers of the Puyallup Sales Office in February

5  2010.  *Id.* ¶ 16.  Caytie Zielinski ("Zielinski"), Christopher Murphy ("Murphy"), Morgan

6  Torres ("Torres"), Christi Sanchez ("Sanchez"), and Bernice Cazares ("Cazares") were

7  hired in February 2010, October 2010, November 2015, March 2016, and June 2016,

8  respectively, to perform sales in the Puyallup Sales Office.  *Id.* ¶¶ 17–21.  "As a

9  condition of employment," the individual defendants entered into various agreements

10  with WBX.  *Id.* ¶¶ 23, 24, 26.

11       Every individual defendant executed their own "Acknowledgments and Receipts"

12  ("Acknowledgements") at or around the time of hiring.  *Id.* ¶ 24; Dkt. 8-4 (William

13  Parker); Dkt. 8-5 (Brian Parker); Dkt 8-6 (Zielinski); Dkt. 8-8 (Cazares); Dkt. 8-10

14  (Murphy); Dkt. 8-12 (Sanchez); Dkt. 8-14 (Torres).  Sand Dollar Holdings is an "express

15  intended third-party beneficiary" of the Parkers' and Zielinski's acknowledgments.

16  Compl. ¶ 24.  Defendants' Acknowledgments prohibit them from using or disclosing

17  Confidential Information outside of the scope of their employment with WBX, and

18  further prohibit them from using or disclosing Confidential Information "to any other

19  individual, company, or entity" after their employment with WBX has ended.  Dkts. 8-4,

20  8-5, 8-6, 8-8, 8-10, 8-12.

21       The Parkers, Zielinski, and Murphy additionally executed their own non-compete

22  agreements ("Non-Competes") at or around the time of hiring.  *Id.* ¶ 23; Dkt. 8-1

1   (William Parker); Dkt. 8-2 (Brian Parker); Dkt. 8-3 (Zielinski); Dkt. 8-11 (Murphy).  The

2   Parkers' and Zielinski's Non-Competes prohibit them from "directly or indirectly

3   [engaging] in the food brokerage business that competes directly with [WBX] in the state

4   of Oregon" during their employment and for a year after their employment has ended.

5   Dkts. 8-1, 8-2, 8-3.  Murphy's Non-Compete prohibits him from engaging "in any

6   business or enterprise which competes with the business of [WBX], within the states of

7   Oregon, Washington, Idaho, Hawaii and/or Northern California."  Dkt. 8-11 at 1.  The

8   Non-Competes also govern these defendants' use of Confidential Information,

9   prohibiting them from ever using or disclosing Confidential Information and requiring

10  them to return any and all copies of Confidential Information to WBX at the end of their

11  employment.  *See* Dkts. 8-1, 8-2, 8-3, 8-11.

12          Cazares, Sanchez, and Torres additionally executed confidentiality agreements

13  ("Confidentiality Agreements") at or around the time of hiring which prohibit them from

14  directly or indirectly competing with WBX during their employment.  *See* Dkt. 8-9 at 1

15  (Cazares); Dkt. 8-11 at 1 (Sanchez); Dkt. 8-13 at 1 (Torres).  The Confidentiality

16  Agreements also prohibit these defendants from using or disclosing Confidential

17  Information outside the scope of their employment or without authorization.  *See id.*

18          "As a further condition of employment," the Parkers also executed an

19  Employment Agreement ("Parkers' Employment Agreement") at or around the time of

20  their hiring.  Compl. ¶ 26; *see also* Dkt. 8-7.  The Employment Agreement prohibits them

21  from directly or indirectly competing with WBX during their employment and further

22  governs their use of Confidential Information by prohibiting them from using or

1    disclosing Confidential Information outside the scope of their employment or without

2    authorization.  *See* Dkt. 8-7 at 3.  While the Parkers' numerous agreements govern

3    similar conduct, the Parkers' Employment Agreement does not reference or incorporate

4    any of their other agreements with WBX.

5        Notably, the Parkers' Employment Agreement also includes a forum selection

6    clause which reads in full:

7        If any dispute should arise under this Agreement the parties will first try
         and resolve it voluntarily but if they should fail to do so the matter will be
8        resolved in the State Courts of Multnomah County Oregon.

9    Dkt. 8-7 at 4.  None of Defendants' other agreements with WBX contain a forum

10   selection clause.  Dkt. 17 at 5.

11       In the course of their employment with WBX, all individual defendants "had

12   access to, and became acquainted with" WBX's Confidential Information, including

13   information about WBX's customers and vendors, pricing, marketing, and "methods of

14   doing business."  Compl. ¶ 22.  On February 13, 2017, Zielinski emailed the Parkers

15   stating "we are in," allegedly in reference to joining Double B.  *Id.*  Also on or around

16   February 13, 2017, individual defendants began to access, print, and then delete

17   Confidential Information from WBX computers.  *Id.* ¶ 39.  Between February 18 and 22,

18   2017, the individual defendants, without the authority of WBX, deleted a combined 612

19   files from WBX computers, some of which contained Confidential Information including

20   price lists and customer order guides.  *Id.* ¶ 34.  While still employed at the Puyallup

21   Sales Office, the individual defendants discouraged customers and vendors from dealing

22

1   with WBX and encouraged them to take their business to Double B or other distributors.

2   *Id.* ¶¶ 27–28.

3          On February 21, 2017, the Parkers tendered their resignation from WBX. *Id.* ¶ 29.

4   That same day, the Parkers and Zielinski printed Confidential Information from WBX

5   computers, including call lists identifying WBX customers and their contact information.

6   *Id.* ¶¶ 29, 33.  The next day, February 22, 2017, under the encouragement of the Parkers

7   and Zielinski, the Non-Parker Defendants also all tendered their resignations from WBX.

8   *Id.* ¶¶ 32, 38.  That same day, the Parkers contacted WBX customers Fiesta Foods and

9   Three Bears without authority from WBX to solicit them as potential customers for

10  Double B.  *Id.* ¶¶ 30, 31.

11         On February 24, 2017, three days after their resignation, the Parkers formed

12  Double B to compete with WBX.  *Id.* ¶ 35.  Double B is a Washington limited liability

13  company with its headquarters in Pierce County, Washington.  *Id.* ¶ 7.  The individual

14  defendants are all employees of Double B.  *Id.* ¶¶ 35, 65, 75, 84.  As Double B

15  employees, the individual defendants have solicited WBX customers using WBX

16  Confidential Information.  *Id.* ¶ 37.  The individual defendants have retained the

17  Confidential Information removed from WBX without its authority, and further intend to

18  use and disclose, have used and disclosed, or are using and disclosing that information to

19  compete with WBX for their own benefit and the benefit of Double B.  *Id.* ¶ 41.

20

21

22

# III.    DISCUSSION

## A.    Standard

Defendants move for dismissal under the doctrine of *forum non conveniens*. Dismissal under *forum non conveniens* is discretionary, and should be evaluated by balancing public interest factors with the private interests of the parties. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 237 (1981). The public interest factors to be considered are

> (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum.

*Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009) (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)). *See also Atl. Marine Const. Co. v. U.S. Dist. Court for Western Dist. Of Texas*, 134 S. Ct. 568, 581 n.6 (2013) (quoting *Piper*, 454 U.S. at 241 n.6); *Creative Tech Ltd. v. Aztech Sys. PTE*, 61 F.3d 696, 703–04 (9th Cir. 1995). The private interest factors to be considered are:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Boston Telecom.*, 588 F.3d at 1206–07 (9th Cir. 2009) (quoting *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001)); *see Atl. Marine* 134 S. Ct. at 581, n. 6 (quoting *Piper*, 454 U.S. at 241, n. 6); *Creative Tech*, 61 F.3d at 703–04. The Court must also honor Plaintiffs' venue privilege and "give some weight to plaintiff's choice of

1  forum." *Boston Telecom.*, 588 F.3d at 1206–07 (citing *Norwood v. Kirkpatrick*, 349 U.S.

2  29, 32 (1955)).

3      The presence of a forum selection clause requires that the Court adjust its usual

4  *forum non conveniens* analysis in three ways. *See Atl. Marine*, 134 S. Ct. at 581. *See*

5  *also In re Orange, S.A.*, 818 F.3d 956, 961 (9th Cir.) *cert. denied sub nom. Orange, S.A.*

6  *v. U.S. Dist. Court for N. Dist. of California*, 137 S. Ct. 282 (2016). First, "the plaintiff's

7  choice of forum merits no weight" and the burden is placed on the plaintiff to show that

8  plaintiff's contractual obligation under the forum selection clause should not be enforced.

9  *Atl. Marine*, 134 S. Ct. at 581–82. Second, the court should consider only the public

10  interests opposing dismissal. *Id*. Third, the original venue's choice of law rules will not

11  follow the case to the contractually forum—"a factor that in some circumstances may

12  affect public interest considerations." *Id*.

13      Further, a "forum selection clause [should be] given controlling weight in all but

14  the most exceptional circumstances" where enforcement would be unreasonable, or

15  where public interest factors "overwhelmingly disfavor" dismissal. *Id*. at 581 (quoting

16  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (KENNEDY, J., concurring)); *see*

17  *also Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Argueta v. Banco*

18  *Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996). Enforcement of a forum selection

19  clause is unreasonable if (1) the clause is the result of fraud, undue influence, or

20  overreaching; (2) trial in the contractually forum "would be so difficult and inconvenient

21  that [a party] would effectively be denied a meaningful day in court"; or (3) enforcement

22  of the clause would contravene a strong public interest of the original forum. *Argueta*, 87

1    F.3d 320 at 325 (citing *Bremen*, 401 U.S. 1 at 12–13, 15, 18) (quoting *Pelleport Investors*

2    *Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 281 (9th Cir. 1984)).

3    **B.    Enforceability of the Forum Selection Clause**

4            Defendants argue that the forum selection clause found in the Parkers'

5    Employment Agreement is enforceable because enforcement would not be unreasonable

6    and "forum selection clauses should control except in unusual cases."  Dkt. 15 at 5

7    (quoting *Atl. Marine*, 134 S. Ct. at 582).  On the other hand, WBX argues that this is the

8    "unusual case" where a forum selection clause should not be enforced.  Dkt. 17 at 2.

9    However, there is nothing "unusual" about the Parkers' contractual relationship with

10   WBX, and this Court sees no reason to deprive the Parkers of the benefit of their bargain

11   or to release WBX from its contractual obligation.  WBX does not dispute that the forum

12   selection clause is valid and has failed to carry its burden to show that public interest

13   factors "overwhelmingly disfavor" dismissal.  Dkt. 17 at 4; Dkt. 18 at 5.

14           WBX fails to show that the first set of factors—local interests—weigh against

15   dismissal of this action.  WBX argues that "Washington has a far greater interest" than

16   Oregon, because it involves the alleged "malicious and intentional conversion of trade

17   secrets by Washington residents in Washington."  Dkt. 17 at 5.  However, they also note

18   that Oregon "may have an interest in punishing foreign citizens for stealing from an

19   Oregon company."  Dkt. 17 at 4.  WBX fails to show how Washington's interest in

20   protecting its businesses is any greater than Oregon's interest in doing the same.  Further,

21   for this interest factor "we ask only if there is an identifiable local interest in the

22

1    controversy," which WBX admits there is, "not whether another forum also has an

2    interest." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006).

3         WBX similarly fails to show that the second factor, unfamiliarity with governing

4    law, weighs against dismissal.  WBX argues that it is "not in the public interest to ask an

5    Oregon Superior Court to decide questions of Federal and Washington law" under which

6    they bring their claims.  Dkt. 17 at 5.  However, as discussed below, the Court will not

7    dismiss WBX's federal claims, so an Oregon State court will not have to decide questions

8    of federal law in this case.  Further, an Oregon State court may not have to decide

9    questions of Washington law either, because Washington law may not govern these

10   claims if they are brought again in the contractually forum.  The Court's choice-of-law

11   rules will not follow this action to Oregon State court; that court will instead apply

12   Oregon choice-of-law rules, and in doing so, may determine that Oregon law should

13   govern.  The Court does not find that the *possibility* of an Oregon State court needing to

14   apply Washington law is so unfavorable as to relieve WBX of its contractual obligation

15   to litigate there.

16        WBX presents no argument or evidence regarding the remaining factors: the

17   burden on Oregon courts and juries, the congestion of the Oregon State courts, or the

18   costs of resolving a dispute unrelated to the forum.  On the contrary, WBX actually

19   admits that the dispute is not unrelated to Oregon.  Dkt. 17 at 4.  Therefore, WBX has

20   failed to carry its burden of proof to show that this is the "unusual case" in which a forum

21   selection clause should not be enforced.

22

1  **C.      Applying the Forum Selection Clause to Non-Party Defendants**

2        Defendants rely heavily on *Manetti* to argue that the forum selection clause in the

3  Parkers' Employment Agreement binds Double B and Non-Parker Defendants, even

4  though they are not parties to it.  They argue that their alleged conduct and employment

5  relationships with WBX are "essentially identical" to that of the Parkers and are "closely

6  related to the Parkers' employment relationship with WBX."  Dkt. 15 at 6; Dkt. 18 at 9.

7  Defendants further argue that Double B and Non-Parker Defendants are entitled to

8  enforcement of the clause because they all consent to the jurisdiction of the contractually

9  forum.  Dkt. 15 at 7; Dkt. 18 at 8–9.  However, Defendants misapply the holding and

10  principle of *Manetti*.

11        *Manetti* establishes that "a range of transaction participants, parties, and

12  non-parties" can be bound by a forum selection clause where their alleged conduct is

13  "closely related to the *contractual relationship*" containing the clause.  *Manetti*, 858 F.2d

14  at 514 n.5 (emphasis added). The Ninth Circuit has narrowly applied *Manetti* to conduct

15  that is closely related to the contract containing the forum selection clause—not to its

16  signatories or their conduct.  *See Holland America Line Inc. v. Wartsila North America,*

17  *Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (forum selection clauses in contracts between the

18  plaintiff and a French classification society applied equally to the society's non-signatory

19  Canadian and American providers because "any transaction between those entities and

20  [the plaintiff] took place as part of the larger contractual relationship between [the

21  plaintiff] and the society"); *TAAG Linhas Aereas de Angola v. Transamerica Airlines,*

22  *Inc.*, 915 F.2d 1351, 1352–54 (9th Cir. 1990) (An airline, its parent company, and several

1     of its officers who all allegedly "failed to pay commissions due under [an] agreement"

2     that only the airline signed were all bound by the forum selection clause therein);

3     *Manetti*, 858 F.2d at 511–13 (the forum selection clause in an exclusive dealership

4     contract signed only by one defendant applied equally to its parent company and its

5     American subsidiary, and several of their officers who all allegedly interfered with and

6     attempted to terminate the contract); *Adema Techs Inc. v. Wacker Chemie AG*, No.

7     13-CV-05599-BLF, 2014 WL 3615799 (N.D. Cal. July 22, 2014 ), *aff'd* 657 F. App'x

8     661 (forum selection clause applied equally to defendant chemical company and its

9     non-signatory parent company which was "alleged to have been the primary contact after

10     polysilicon shipments commenced under the supply agreement" signed by defendant).

11         **1.    Double B**

12         In this case, Double B's alleged conduct is closely related to the Parkers'

13     Employment Agreement.  The Parkers allegedly formed Double B with the purpose of

14     competing with WBX, in direct defiance of the "Payment and Obligations After

15     Termination" and "Competitive Activities" provisions of the Employment Agreement.

16     Compl. ¶ 34; *see also* Dkt. 8-7 at 3–4.  Further, WBX alleges that the Parkers, through

17     Double B, are continuing to misuse WBX's confidential information and trade secrets, in

18     direct defiance of the "Proprietary Information Obligations" provision of the Parkers'

19     Employment Agreement.  Compl. ¶¶ 41, 104–105, 111; *see also* Dkt. 8-7 at 3.  In this

20     way Double B is closely related to the Parkers' Employment Agreement because the

21     Parkers are allegedly using the corporation to violate the terms therein.  Pursuant to

22     *Manetti*, the forum selection clause binds Double B.  Therefore, any claims against

1  Double B within the scope of the forum selection clause must be dismissed in favor of the

2  contractually forum.

3      **2.      Non-Parker Defendants**

4      Conversely, the forum selection clause does not bind Non-Parker Defendants

5  because their alleged conduct is not closely related to the Parkers' Employment

6  Agreement and they are otherwise not entitled to enforce it.  Non-Parker Defendants each

7  have their own contracts with WBX, and none are party to or third-party beneficiaries of

8  the Parkers' Employment Agreement.  This Court therefore refuses to dismiss any claims

9  against the Non-Parker Defendants absent a showing that venue is otherwise improper.

10      In *Holland America* and *TAAG*, the non-signatories were parent companies or

11  subsidiaries of the signatory party who were responsible for acting pursuant to or in

12  furtherance of the contract, but as independent non-signatory employees, Non-Parker

13  Defendants have no responsibility to follow or further the terms of the Parkers'

14  Employment Agreement.  *See Holland America*, 485 F.3d at 454 (American and

15  Canadian entities of a French classification society performed services pursuant to the

16  society's contracts with American and Canadian clients); *TAAG*, 915 F.2d at 1352 (the

17  parent corporation of an airline and its officers  were allegedly responsible to pay

18  commissions owed by the airline pursuant to its contract with another airline).  Unlike the

19  non-signatories in *Holland America* or *TAAG*, who were parts of the larger contractual

20  relationship with the signatory party, Non-Parker Defendants have no role in the

21  contractual relationship between the Parkers and WBX.  Further, unlike in *Manetti*,

22  Non-Parker Defendants' alleged conduct did not directly interfere with or violate the

1    terms of the Employment Agreement.  *See Manetti*, 858 F.2d at 511–14 (plaintiff

2    distributor alleged that defendants "sought to terminate [their] exclusive dealership

3    [contract]" and committed various torts to bring distribution "within [the defendants']

4    corporate structure" instead).

5         Defendants' argument that Non-Parker Defendants' conduct is closely related to

6    the Parkers' Employment Agreement because their conduct, employment relationships,

7    and contracts are all "essentially identical and tethered to the Parkers' employment

8    relationship with WBX" are unpersuasive.  Dkt. 15 at 6; *See also* Dkt. 18 at 9–10.  While

9    Defendants cite to *Adema Techs.* to assert that "it is settled law in the Ninth Circuit that

10   parties . . . that are closely related to a party subject to a forum selection clause may also

11   be subject to the clause," this proposition is an inaccurate construction of Ninth Circuit

12   law.  Dkt. 18 at 5.  In *Adema Techs.*, the court applied a forum selection clause to

13   defendant's non-signatory parent company because its conduct was "closely related to the

14   *contractual relationship*" between defendant and plaintiff—not because the parent

15   company was closely related to defendant.  *Adema Techs.*, 2014 WL 3615799 at *6

16   (emphasis added).  A non-signatory who is closely related to the signatory party may also

17   be closely related to that party's contract containing a forum selection clause, and in that

18   case they are bound by the clause—but they are bound by their relation to the *contract*,

19   not by their relation to the party.  Non-Parker Defendants' alleged conduct may be

20   similar, even "identical" to that alleged against the Parkers, but that does not make them

21   "closely related" pursuant to *Manetti*.

22

1    Defendants fail to make any showing that Non-Parker Defendants' conduct is

2   related to the Parkers' Employment Agreement.  On the contrary, Defendants' reply

3   recognizes that Non-Parker Defendants' alleged conduct relates to their own independent

4   contracts with WBX, but argues nonetheless that the forum selection clause should bind

5   Non-Parkers Defendants because those independent contracts are "essentially identical"

6   to those of the Parkers.  Dkt. 18 at 10.  Defendants cite to *City of Los Angeles ex rel.*

7   *Knudsen v. Sprint Sols., Inc.*, No. CV 16 -7512-DSF (AJWx), 2017 WL 1398640 (C.D.

8   Cal. Apr. 18, 2017), for the proposition that the forum selection clause should apply to

9   "closely related contracts that are all part of the same dispute between the same

10  contracting parties."  *Id.* at *1.  However, the Parkers and Non-Parker Defendants are not

11  "the same contracting parties."  WBX contracted separately with each defendant, and

12  each defendant's contractual relationship with WBX (except for the Parkers'

13  Employment Agreement, which was entered into by both William and Brian Parker) is

14  independent from WBX's contracts with the others.  In fact, the Court finds that the

15  contracts are not "essentially identical" because only the Parkers' Employment

16  Agreement contains a forum selection clause.  The similarity of the Non-Parker

17  Defendants' conduct and contracts to the Parkers' does not make them "closely related"

18  pursuant to *Manetti*, because those similarities do not create a relationship between the

19  Non-Parker Defendants and the Parkers' Employment Agreement.

20      Defendants also argue that the benefit of the forum selection clause should be

21  extended to the Non-Parker Defendants because they all consent to the jurisdiction of the

22  contractually forum.  Dkt. 15 at 7; Dkt. 18 at 8–9.  In doing so, Defendants rely on *TAAG*

1    and the Third Circuit's decision in *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,

2    709 F.2d 190 (3rd Cir. 1983).  However, the Third Circuit itself has refused to extend

3    *Coastal Steel* to entitle a non-signatory with a separate and independent contractual

4    relationship to enforcement of a forum selection clause.  *See Dayhoff Inc. v. H.J. Heinz*

5    *Co.*, 86 F.3d 1287, 1297 (3rd Cir. 1996).  This Court agrees with the Third Circuit's

6    decision in *Dayoff*.

7           In *Dayoff*, the Third Circuit rejected the argument that a non-signatory with a

8    separate and independent contractual relationship with the plaintiff was entitled to

9    enforcement of a forum selection clause because they had consented to the contractually

10   forum.  86 F.3d at 1297.  The Third Circuit recognized that allowing a non-signatory's

11   consent to entitle them to enforce a forum selection clause essentially gives them "the

12   option to accept or reject" a benefit they did not bargain for, while forcing the signatory

13   party to "accede to [the non-signatory's] wishes."  *Id*.  Non-Parker Defendants are asking

14   the Court to give them that option.  However, Non-Parker Defendants each have their

15   own contracts with WBX, none of which preselect a forum.  The Court will not give

16   Non-Parker Defendants the choice to accept or reject a forum selection clause that they

17   did not bargain for because "the very fact that [they] would have such a choice belies the

18   existence of" their separate agreements with WBX.  *Id*.

19          Additionally, the Court does not find its decision conflicts with that of the Ninth

20   Circuit in *TAAG*.  First, unlike Non-Parker Defendants, the non-signatory defendants in

21   *TAAG* would be closely related pursuant to *Manetti*, so they would be bound by the

22   forum selection clause regardless.  *See supra* p. 9.  Second, it was not argued in *TAAG*

1   that the non-signatory defendants had their own independent contracts with the plaintiff

2   such as Non-Parker Defendants have with WBX.  Therefore the determination in *TAAG*

3   that it would "not be unreasonable or unjust to enforce" a forum selection clause for

4   non-signatory defendants did not risk usurping those defendants' other contractual

5   relations by conferring on them a benefit they did not bargain for, or otherwise promote

6   forum shopping by giving the defendants an option to accept or reject a forum selection

7   clause at will.  *TAAG*, 915 F.2d at 1354.  Those risks are present in this case and the

8   Court finds it necessary to avoid them by refusing to allow Non-Parker Defendants to

9   enforce a forum selection clause they are not party to merely because they consent to the

10   jurisdiction of the contractually forum.

11   **D.    Scope of the Forum Selection Clause**

12        Having determined that the forum selection clause in the Parkers' Employment

13   Agreement is valid and enforceable as to the Parkers and Double B, the Court must now

14   determine whether it applies to all or just some of the claims against them.

15        According to the Parkers' Employment Agreement, the forum selection clause

16   applies to any claims that "arise under" the contract.  The Ninth Circuit in *Mediterranean*

17   *Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983), found that the

18   "arising out of" language in an arbitration agreement which "omits reference to disputes

19   'relating to' an agreement" is "intended to cover a much narrower scope of disputes, *i.e.*,

20   only those relating to the interpretation and performance of [a] contract itself."  *Id*.  The

21   Ninth Circuit has extended their holding in *Mediterranean Enterprises* to agreements

22   containing forum selection clauses.  *See e.g. Rey v. Rey*, 666 F. App'x 675, 676 (9th Cir.

1    2016) (citing *Mediterranean Enterprises* for the proposition that the "stemming under"

2    language of a forum selection clause made it narrow in scope).  Therefore, the "arising

3    under" language of the forum selection clause narrows its scope to include only those

4    claims which "'cannot be adjudicated without analyzing whether the parties were in

5    compliance' with the agreement containing the clause."  *Rey,* 666 F. App'x at 676

6    (quoting *Manetti*, 858 F.2d at 514).

7         **1.    Claims Against The Parkers**

8         Defendants argue that the forum selection clause applies to all claims against the

9    Parkers because "each of [WBX's] thirteen claims involve interpretation of the

10   Employment Agreement," and "none of the claims could go forward had the contract not

11   existed."  Dkt. 15 at 5–6.

12        The Court finds that WBX's third claim for breach of contract plainly arises under

13   the Parkers' Employment Agreement because it alleges that the Parkers "breached, are

14   breaching, and are threatening to breach, their Employment Agreement."  Compl. ¶ 56.

15        Conversely, WBX's claims for declaratory judgment, first two claims for breach

16   of contract, and claim for promissory estoppel do not arise under the Parkers'

17   Employment Agreement because they explicitly arise under independent and unrelated

18   contracts.  Claim one against the Parkers for declaratory judgment asserts that "WBX is

19   entitled to declaratory judgment … under [the Parkers'] *Non-Competes*" and claim two

20   asserts that "WBX is entitled to declaratory judgment … under [the Parkers']

21   *Acknowledgments*."  Compl. ¶ ¶ 44, 45 (emphasis added).  Similarly, claim one against

22   the Parkers for breach of contract alleges that they "breached, are breaching, and are

1    threatening to breach, their respective *Non-Competes*" and claim two alleges that they

2    "breached, are breaching, and are threatening to breach, their respective

3    *Acknowledgments*."  Compl. ¶¶ 48, 52 (emphasis added).  Finally, the claim against the

4    Parkers for promissory estoppel seeks to enforce "the restrictive covenants in [the

5    Parkers'] *Non-Competes* [and] *Acknowledgments*."  Compl. ¶ 89 (emphasis added).  As

6    such, these claims are not within the scope of the Parkers' Employment Agreement.

7        WBX's claim for breach of covenant of good faith and fair dealing is essentially

8    an extension of its breach of contract claims above.  "Generally, there is an implied

9    covenant of good faith and fair dealing in every contract," a breach of which occurs

10   "when either party violates, nullifies or significantly impairs any benefit of the contract."

11   *Id*.  Therefore, this claim arises separately under each of the Parkers' contracts with

12   WBX.  This claim arises under the Parkers' Employment Agreement only to the extent

13   that it alleges a violation of the covenant implied therein.  Like the breach of contract

14   claims above, this claim is not within the scope of the forum selection clause with respect

15   to alleged violations of the Parkers' other agreements with WBX.

16       WBX's claim for breach of fiduciary duty arises under the scope of the forum

17   selection clause because it requires evaluating the Parkers' compliance with the duties

18   created by their employment relationships with WBX.  To breach a fiduciary duty is to

19   violate the "duty of utmost good faith, confidence, trust, and candor" owed to another.

20   *Duty*, Black's Law Dictionary (10th ed. 2014).  In this case, the Parkers' fiduciary duties

21   to WBX arise from their employment relationships, which are a product of all of their

22   agreements with WBX.  Therefore, this claim cannot be adjudicated without analyzing

1   the Parkers' compliance with the duties owed under each of their agreements, including

2   the Employment Agreement.

3          WBX's claim for conversion also falls within the scope of the forum selection

4   clause because it requires analyzing whether the Parkers' use of Confidential Information

5   violates their Employment Agreement.  A claim for conversion can be premised on

6   wrongful detainment by refusing to return property to the rightful owner, destruction or

7   alteration, wrongful taking, wrongful transfer, or misuse of another's property.  16 Wash.

8   Prac., Tort Law And Practice § 14:16 (4th ed.).  This claim is premised on the Parkers'

9   "misappropriating, using, and failing to return WBX Confidential Information."  Compl.

10   ¶ 72.  Adjudicating this claim requires determining whether or not this conduct is

11   wrongful, which necessarily requires analyzing the Parkers' compliance with each of

12   their agreements with WBX, including their Employment Agreement, because they all

13   govern the Parkers' use of Confidential Information.

14          WBX's claims against the Parkers for tortious interference with economic

15   relations, unjust enrichment, accounting, and trade secret misappropriation, respectively,

16   arise from the same alleged wrongful use of Confidential Information.  Compl. ¶¶ 81, 93,

17   98, 105.  Therefore, for the reasons above, these claims also fall within the scope of the

18   forum selection clause because they cannot be adjudicated without analyzing the Parkers'

19   Employment Agreement.

20          Finally, WBX's claims for violations of the DTSA and CFAA are not within the

21   scope of the forum selection clause.  Defendants argue that these claims involve

22   interpretation of the Parkers' Employment Agreement because they are "premised upon

1    an alleged improper use of WBX's confidential information, and the Parkers'

2    Employment Agreement contains a clause regarding permitted use of WBX's

3    confidential information." Dkt. 15 at 5–6. This argument is unpersuasive because these

4    claims do not allege that the Parkers' use of Confidential Information violates the

5    Parkers' Employment Agreement. Instead, these claims are premised on the Parkers' use

6    of Confidential Information being improper under the DTSA and CFAA. *See* Compl. ¶¶

7    111–12, 114–16.[1]

8        **2.    Claims Against Double B**

9        WBX's claims against Double B for breach of fiduciary duty, conversion, and

10   tortious interference with economic relations fall within the scope of the forum selection

11   clause only to the extent that they rely on the liability of the Parkers. These claims are all

12   premised on the liability of the individual defendants, including the Parkers, under the

13   doctrine of *respondeat superior*.[2] WBX's claim against Double B for trade secret

14   misappropriation is also premised on the liability of the Parkers, alleging that Double B

15   acquired WBX's trade secrets "by improper means, namely, through conversion and a

16   breach of the [individual defendants'] contractual and fiduciary obligations to WBX."

17   Compl. ¶ 105. As discussed above, the Parkers' liability for these claims is determined

18   by their compliance with their Employment Agreement. Consequently, these claims

19   against Double B will also require analyzing the Parkers' compliance with their

20       [1] Defendants' claim for injunctive relief is intentionally omitted. Injunctive relief is not a "claim
21   for relief" but rather the relief itself. As such, this Court will not consider it on this motion. Compl. ¶
     117.

22       [2] The Court does not address whether a claim for breach of fiduciary duty can be imputed to an
     employer under a theory of *respondeat superior*.

1   Employment Agreement.  However, because claims against Non-Parker Defendants are

2   not subject to the forum selection clause, these claims against Double B which rely on the

3   liability of Non-Parker Defendants are not within the scope of the forum selection clause.

4         WBX's claim against Double B for unjust enrichment is not within the scope of

5   the forum selection clause because it is based on the independent conduct of Double B.

6   Unlike the claims above, this claim is premised on Double B's own "use of WBX's

7   confidential information, WBX customer and vendor relationships, and WBX goodwill,"

8   not on the Parkers' conduct.  Double B's independent conduct is not governed by the

9   Parkers' Employment Agreement because Double B is not party to it.  Therefore, this

10  claim does not involve interpretation of the Parkers' Employment Agreement.

11        Finally, WBX's DTSA claim is not within the scope of the forum selection clause

12  for the same reasons that the claim against the Parkers is not.

13        **3.     Claims Against Non-Parker Defendants**

14        Non-Parker Defendants are not subject to the forum selection clause, so neither are

15  the claims against them.  Each Non-Parker Defendant has their own independent

16  contractual and employment relationship with WBX which confers rights and duties to

17  them individually.  Any claims against Non-Parker Defendants arise under their

18  independent contracts or from their individual conduct, not from the Parkers'

19  Employment Agreement.

20  **E.     Stay of This Action**

21        In their reply, Defendants raise the issue of staying this action "until the Oregon

22  case is resolved."  Dkt. 18 at 11.  This is not an appropriate method to request a stay.

1  "Issues raised for the first time in the reply brief are waived." *Bazuaye v. I.N.S.*, 79 F.3d

2  118, 120 (9th Cir. 1996) (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir.

3  1990)).  The Court will not consider a request to which WBX has had no opportunity to

4  respond or object to.  Defendants' request for stay is denied without prejudice.

5  Defendants may move to stay this action by filing an appropriate motion with the Court.

6  **F.    Conclusion**

7           The forum selection clause is valid and the Parkers are entitled to enforce it.  Any

8  claims against the Parkers within the scope of the forum selection clause must be

9  dismissed in favor of the contractually selected forum.  Therefore, Defendants' motion to

10  dismiss WBX's claims against the Parkers for breach of the Parkers' Employment

11  Agreement, breach of covenant of good faith and fair dealing implied in the Parkers'

12  Employment Agreement, breach of fiduciary duty, unjust enrichment, tortious

13  interference with economic relations, accounting, and trade secret misappropriation is

14  granted.  The motion is denied as to the remaining claims.

15           The forum selection clause also applies to the claims against Double B to the

16  extent that they are based on *respondeat superior* liability for the claims against the

17  Parkers that are being dismissed.  Any such claims against Double B must also be

18  dismissed in favor of the contractually selected forum.  Therefore, Defendants' motion to

19  dismiss WBX's claims against Double B for breach of fiduciary duty, conversion, and

20  tortious interference with economic relations is granted to the extent that they are

21  premised on the Parkers' conduct.  Defendants' motion to dismiss is denied for the

22  remaining claims against Double B.

1      Non-Parker Defendants are not bound by the forum selection clause and are

2  otherwise not entitled to enforce it.  Therefore, without a showing that venue is otherwise

3  improper, Defendants' motion to dismiss is denied for all claims against Non-Parker

4  Defendants.

## IV.   ORDER

6      Therefore, it is hereby **ORDERED** that Defendants' motion (Dkt. 15) is

7  **GRANTED in part** and **DENIED in part** as follows:

8      1.    Claims against the Parkers for breach of their Employment Agreement,

9  breach of covenant of good faith and fair dealing implied in their Employment

10  Agreement, breach of fiduciary duty, conversion, tortious interference with economic

11  relations, accounting, unjust enrichment, and trade secret misappropriation are

12  **DISMISSED without prejudice**;

13      2.    Claims against Double B for breach of fiduciary duty, conversion, tortious

14  interference with economic relations, and trade secret misappropriation are **DISMISSED**

15  **without prejudice** to the extent that they are premised on the Parkers' conduct;

16      3.    Defendants' motion to dismiss is **DENIED** as to the remaining claims; and

17      4.    Defendants' motion to stay is **DENIED without prejudice.**

18  Dated this 18th day of July, 2017.

19

_____

BENJAMIN H. SETTLE

20  United States District Judge

21

22